We'll hear argument first this morning in Case 14-15, Armstrong v. the Exceptional Child Center. Mr. Withrow. Thank you, Mr. Chief Justice, and may it please the Court. Respondents have no rights under Section 30A, and so they have no privately enforceable right of action to enforce that statute under Section 1983 or under an implied right of action. The Supremacy Clause does not provide an alternative freestanding right of action to enforce Section 30A either. This case is distinguishable from the cases where this Court has invalidated State or local law under the Supremacy Clause. In fact, this is not a preemption case at all. It is an action to enforce statute, and it is foreclosed by Sandoval, Gonzaga University, and Astra. Preemption solves the problem of two separate sovereigns regulating independently in the same territory. The Supremacy Clause resolves the conflict that arises when State law regulates a plaintiff in a manner that Federal law protects against. But Section 30A is not. Sotomayor, if this is unlike those other cases where we've invoked the Supremacy Clause, what's the basis for those cases? The basis for those cases is that there would have been Federal law that allowed plaintiff's conduct, and then State law that interfered with that conduct, that it was allowed by Federal law, and thus the Supremacy Clause resolved the conflict and provided people with freedom. I'm not sure I understand your answer. Okay. That's the claim here, that there's a Federal law that is contrary to the State law, and I don't know why you can't look at this as an enforcement action. The State law won't permit these individuals to charge an amount greater than what they're willing to pay. So if these doctors or providers wanted to charge more, they would be in violation of State law and would have an enforcement action against them. So, I mean, I don't actually see this enforcement argument that you're making. I have two responses to that, Justice Sotomayor. The first is that under Idaho's scheme, that there would not arise a situation where providers are charging patients more than the State allows. The way that it works in Idaho, particularly with respect to this waiver program, is that the providers provide the service to the beneficiary. The providers then bill the State, and the State reimburses them. And both under Federal regulations and State regulations, the providers come into the program and agree to take as payment in full the lesser of the amount of their customary charges or the State-set rates. And so we would not have a situation where they would be charging, resorting to self-help, and charging more than the greater limit. Sotomayor, and then you would come in and say you violated Federal and State regulation. You wouldn't pay it. That's correct, Your Honor. We wouldn't pay it. They, in fact, send us bills all the time with their customary charge, and we pay them the State rate. We say, thank you. But what if they just asked the patient herself to pay a supplemental rate? And then you would have come in and you would say, you know, you can't do that. And that would be balance billing, which is also not allowed under State or Federal law. Yes, it's not allowed. That's right. But that's why you would bring an enforcement action against such a supplemental bill. And their defense would not be, they wouldn't have a valid defense that our rates are too low in violation of the Medicaid Act, because they don't have a right to a specific rate or a process or anything else under Section 30A. And so they couldn't raise, if we, if under that situation we were to go after them for violating the rule. That would be a merits question. I mean, they would make that exact claim. They would say the rates are too low, the rates violate Federal law, we're entitled to a higher rate. And that might go to the merits there. But what we would say is that you look at the statute first, and the statute doesn't entitle them to anything. And that's sort of like in determining whether a plaintiff has a Section 1983 right or whether a plaintiff has standing, for example. You kind of have to wade into the merits just a little bit. But they wouldn't have that defense. Ginsburg. We have an appendix to the red brief that cites some 57 cases. And is it your contention that those, all of those cases fit into this mold of an affirmative, anticipatory affirmative defense or regulation of primary conduct? Yes, Your Honor. Some of them fall into the, actually some of them fall into the category of Section 1983 rights, having been, having been raised, if we look at the lower court opinions. But the rest of them are largely explainable in one of two ways. The first way is that they do present that situation where you have one sovereign regulating in territory that it is not supposed to be regulating in, and so that law is deemed invalid. The other scenario that those cases present is that the issue of whether there was a preemption cause of action under the Supremacy Clause or some other source wasn't raised. Can you do this? I'm a doctor, and I say I perform some services. I send in the patient. The bill to the patient would have been $82. All right? And the State statute says you only get 60. So I bring a lawsuit and I say I want 80. And you come back and say, no, the State statute says 60. I say I'll tell you that State statute is preempted by this Federal word that it has to be sufficient so that enough providers come along. So forget the State statute. Pay me. Now, can't he say that? And now California could say, well, 80 is too high. You'd have to have some way of figuring out what's the right amount. But everybody would say that if it's true that 60 isn't enough to enlist, then the State statute, which says 60, is preempted by the Federal. That isn't trying to enforce it. What you're trying to do is enforce your claim to get some money for services rendered. Can they not do that? They can't do that. Why not? Because they don't have a right under Section 30A. No, I'm not saying we don't want a right under 30A. There is a plan in California, and that plan has a lot of words in it. And some of those words say that a doctor who provides services under this plan gets paid. Now, the next word happens to be $60. So he wants everything else, but when you get to that 60, he's going to say those words are preempted by the Federal plan, by the Federal statute. And that doesn't seem to me to have anything about all these briefs that are about Federal causes of action under the Supremacy Clause. This just seems like a normal case. It's like where there's a State statute, there's a claim for services rendered. He's entitled to services rendered, but few words of that State statute are preempted by a Federal one. Now, I must be wrong, so, because this has been the second time we've heard this case, and I didn't understand why it was different than that the first time. So if you can't, if I'm off base, don't bother to spend a lot of time. Well, let me try to respond to your question, Justice Breyer. The — in that situation, the claim would really be for an enforcement. The doctor there would be saying, I'm entitled to this rate under this Federal statute. And that looks to me an awful lot like the claims that you — that the Court entertained in Gonzaga and those kinds of things. And there, the Court said, there must be a right, and because Section 30A confers no rights on this doctor, this doctor cannot make the preemption claim. And the second part of that is that, in that sense, the rates do not regulate the doctor's conduct in a way that is protected by Federal law. And that may sound confusing, and so let me try to restate it. In the preemption cases in the appendix in the red brief, we have all of these cases where the Federal government has a statute and the State government has another statute, and that Federal statute displaces the State from being able to regulate, whereas in this case, Medicaid, Section 30A, is part of a cooperative program where the State, rather than being displaced from the arena of regulation, is invited in and participates as a cooperative partner. And so we don't have that two separate sovereigns regulating independently in overlapping territories.  Kagan. Kagan. Kagan. Kagan. And this is true of some significant parts of your brief. You might have an argument on the merits that there shouldn't be preemption here. That the nature of 30A is that the Federal law doesn't preempt the State law. But that's an argument on the merits. It's not a question about whether somebody can come into court and make that claim and tee it up for a court to decide whether there's been preemption in the case. Sure. And I can understand that. I have a response to that. And that is that just like in the 1983 cases and just like in cases where standing is that issue, the examination, when the claim is brought under the Supremacy Clause, the examination first must be to the statute. What does the statute do? Does the statute allow the plaintiff to engage in this conduct that she says is being interfered with by the State? You make that threshold inquiry by looking at the statute. Sotomayor, then what you're arguing is that unless there's a 1983 claim, there's no cause of action. Unless there's a private cause of action, there could never be a Supremacy Clause claim. Not necessarily. There might be a preemption claim outside of the Section 1983 context if that State or if that Federal law regulates the plaintiff in a way that the State law interferes with. So, for instance, the dissent in Golden State hypothesized just this situation, where you had a locality that was regulating employment stuff, and then you had the NLRA and the employer sought a case under 1983. The dissent in Golden State explained that there may in certain circumstances be cases where the plaintiff doesn't have a 1983 right. In other words, the statute at issue does not confer upon her an actual enforceable right, but that may be a case, it may present a case of the wrong sovereign regulating her, and that is the second situation that we contemplate might give rise to a preemption claim. Ginsburg. I mean, I thought that the rate that the providers can bill is the rate that CMS approves. So first, maybe you should straighten out what is the rate. We did have the 2006 rate, and that was approved by CMS. Did CMS approve the 2009 rate? Let me correct one aspect of the reference to the 2006 rates. CMS does not approve or disapprove rates in Idaho's State plan or its waiver. What CMS does is approve the methods and procedures in our plan documents. And so the rates were the 2006 rates were the product of a previous waiver where we had set forth the methods and procedures. And so there was no approval or disapproval of any of the rates, and nor under the statute, the Federal statute or our regulations is that called for. And there has been no approval of the 2009 rate, then? Of the 2000 which rate? The recommended rate for 2009. The rate that Idaho itself said was the appropriate rate. That CMS did not pass on that. That's correct, Your Honor. And what I'm sorry. What's correct? That there has been no approval of the particular rates or the methodology? That there has been no approval of the particular rates. And, in fact, in the 2009 waiver document that was referenced in the Respondent's opposition to our cert petition, they raised this 2009 waiver document. And that waiver document said we are moving to this new methodology. And, again, methodology is divorced from actual rates. But before we do that, we will submit another waiver amendment to fully implement it. Well, I still don't understand why, as Justice Kagan pointed out, that isn't just an argument on that. If we go back to your very first statement, I thought it was important. I thought you were saying, and please correct this if it's improper, if it's a wrong interpretation. There's no supremacy problem here because the Federal government and the State government agreed. And then Justice Sotomayor said, but the position of the Respondents is that the Federal government was wrong. And that's just what Justice Kagan pointed out. If there's no preemption, then you just win on the merits. And did I miss something about your first statement? I thought you were going to give us a principled way to say why this case is different from our other preemptions case. And you began by saying the Federal government and the State government agree. But the point is the Federal government is wrong under the assumption of the Respondent's case. If the Federal government is wrong, then the time to raise that challenge would be in an APA action to challenge the approval of the State plan as arbitrary and capricious or in violation of law. Do they have that right? Providers, yes, as long as they meet the zone of interest test, which I understand is a very low barrier. And they might as well do that. And as an example, these plan these waivers are must be renewed every five years. And we can certainly see how every time a plan is submitted for renewal and is decided upon, that would produce. That's a somewhat ineffective remedy. Let's assume as inflation is going up constantly, what happens two years into the plan when providers can't work for what the State is giving or the State is imposing a tremendous hardship on them, which is happening to a lot of providers who are being underpaid, where do they go? They can't go to the Federal agency because there's no action to challenge. So what do they do? They have a number of opportunities available to them. The first is to call their State Medicaid agency and say, State Medicaid agency, we think that these rates are insufficient. We can't meet the standards anymore. If they get nowhere with the State, they can go to the CMS regional office. And if enough of them complain, the CMS can examine that. It can conduct an audit, which is allowed. There is ongoing program review of these programs. It's an ongoing dialogue once a plan is approved. And so they can bug CMS and get CMS to take an action. And so they have any number of ways to do that.  I was just wondering if there is a way to appeal that to the Federal agency as well and petition for a new rulemaking. Absolutely. And if that rulemaking is denied, they could appeal on the basis that that final agency action is arbitrary or capricious in light of inflation. That's absolutely correct, Your Honor. If there are no further questions at this point, then I would like to reserve the balance of my time. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court, if I may at the outset, I would like to explain why a cooperative Federalism program under the Spending Clause, and particularly Medicaid, is different from the cases in the brief, and why this is not just a question of the merits, but also the question of right. And if I could just take a minute to explain. Mr. Kneedler, you can and I won't interrupt. But then get to why the various cases that we've said there are private causes of action under 1983 would survive. Oh, yes, absolutely. We are not questioning that where a Spending Clause statute confers a right, the 1983 cause of action is present. But I'd like to go back and explain the origins of the cause of action. The cases in the appendix grew out of an equity practice where someone's primary conduct, his liberty, his property, his business, was being interfered with by the State, and Federal law ousted the State from regulating it. What got the party into court was not the Federal law, but the primary right that was being regulated by the State. So the cause of action came from the interference with the property, liberty, or business. Under the Spending Clause, under the Medicaid program, no one has a right independent of the Medicaid program to be reimbursed under Medicaid. There is no freestanding liberty or property interest preexisting or independent of the Medicaid program. So it is necessary both to have a right to invoke some provision of the Medicaid program, and then if you have a right to invoke it, to litigate the merits. So under the Spending Clause program, it is necessary to look to the Act both for the right and for the merits question. Sotomayor, I don't understand why, that is, why is the Spending Clause different than any other provision? For the reason that I said, absent the Medicaid program, there would be no basis for the plaintiff to sue to get money from the State or from the Federal government. It is the Medicaid program that sets up the ability to be paid to begin with. And there is a further point to be made. We're not absent the Medicaid program. The Medicaid program is just like any other statute which provides certain people with certain entitlements or abilities or benefits or something else. And the question here is whether a benefit that the Medicaid program has provided and whether a requirement that the Medicaid program has imposed on the State is being  And that's the question. Just like it is in any other question not arising under the Spending Clause. No, I think it's quite different. And unlike the situation in the appendix to the briefs, you have the sovereigns acting independently of each other, and the State law is entering a field that Federal law does not allow. In the Medicaid program, what you have is a bilateral, essentially contractual relationship between the Federal government and the State, whereby the State is invited in to operate under the superintendence of the Secretary. There's no conflict. There's a cooperative relationship. It's contractual. And in the contractual situation, a third party does not have a right to sue. Sotomayor That still goes to the merits. Kneedler No, it does not. It does not just go to the merits, because under contract law, a third-party beneficiary has a right to sue, in other words, to get into court, only if he is an intended beneficiary. In other words, only if the two parties agree. Sotomayor This is forgetting the essence of the Supremacy Clause question. This is about you're trying to make it one of is it preempted or is it not, but instead the Supremacy Clause question is, do you have a right to ensure that State governments are complying with Federal law, whether it's under the Appointments Clause, whether it's under any provision of the Constitution? Why is it that we should exempt out all Spending Clause cases, because that's what your argument is basically saying, from that kind of enforcement? Who's going to go around when the Federal government doesn't care to ensure that States are in fact doing what they promised to do? Kneedler What Congress has set up is a program that is essentially contractual. And the point about this, it's very important. And that is, in a contractual relationship, a third party can sue only if the two parties intend that party to be able to sue to enforce rights. And that's what this Court's 1983 jurisprudence arising under Spending Clause cases is driving at. Alito What effect would private suits like this have on HHS's ability to do its job? Would they assist HHS or would they interfere? Kneedler I think there's a substantial potential to interfere or at least complicate. Where there is an individual right under the Act, like if an individual beneficiary has a right to get particular benefits under the statute and courts have held their 1983 rights to be, if your income qualified or you get hospital services, you can sue about that. Kagan Judging from the names on the brief, I take it that HHS does not agree with that statement. Kneedler Those are former officials. Kagan Judging from the names on your brief or the absence of names on your brief, I take it that HHS does not agree with that statement. Kneedler In some ways, I suppose private suits could bring attention to what is going on, but if one reads the proposed regulation that HHS has developed, they have proposed that there be guidance for particular. Roberts I suppose HHS may be interested in having these provider rates raised so that they get a bigger chunk of the Federal budget. And in fact, I mean, the competition here is not between the agencies and the providers. It's between health care sector and roads, schools, parks. I mean, the effect here is that the Federal judges get to decide what the reimbursement rates are in a particular area. And it depends, I mean, what would happen if you have five cases going, each one claiming rights to higher rates for under the roads program, under the parks program, under what? Are you aware of any situation where the Federal judges get together and try to balance the State budget? Kneedler No, it's very different. And I think if you look at the language in 30A, it's very instructive. First of all, it says that the State shall establish methods and procedures for determining rates, and then it says that the rates shall be consistent with efficiency, quality of care, and be sufficient to enlist enough providers to come in. Enlist, it doesn't speak of providers having a right, it speaks of inducing the providers to come in. Ginsburg If CSM thinks that that standard in 30A isn't satisfied, that they're not paying enough to enlist sufficient providers to provide the service, could CMS, we're told in the brief State, can cut off funds? Could CMS sue this State and say, we want to enjoin you from paying less than what it takes to provide what 30A calls for? Kneedler It may be, although I think such a suit would be best brought after this Secretary has gone through the administrative process, so that the so what would be enforced would be the Secretary's judgment about whether the rates are sufficient, not asking a court to decide it in the first instance. Ginsburg So you agree that CMS has never blessed this 2009 rate? The rate? Kneedler I mean, it approved the procedures, but not the rate in particular. I want to make one point. Sotomayor Just to follow up, it never approves the rate in particular, right? Kneedler It could. A State could submit a rate, but States submit methodologies. Sotomayor Let's assume that I were to accept the former HHS official's position that these private causes of action are highly important, given the limited resources of the agency. Why couldn't we suggest utilizing the doctrine of primary jurisdiction? Kneedler Primary jurisdiction kicks in only when a court first has jurisdiction. And if I could make one further point, if you this is a very odd lawsuit. It is a provider who participates. Sotomayor Well, I'm not sure what jurisdiction, what that means. Kneedler But you have to be in court in order for primary jurisdiction to be triggered. That's why. Sotomayor Well, this is a Federal law. They're coming in and saying if the State law violates the Federal law. On the merits, they may or may not win. But we keep going back to how is jurisdiction missing? Kneedler Because there is no right to get into court. And think of the oddity of this suit. This is a provider who wants to be, who is in a contractual relationship, going to court and asking the court to insist that the other party to the contract, the State, make it a better offer. That's a very bizarre sort of lawsuit. There's nowhere else in the law does one party to an existing or prospective contract have a right to insist that the other party make a better offer in order to tempt it or to induce it to come in. Kennedy I'm thinking about your distinction between preemption suits we've had in the past and this, which is based on the spending clause. And you said that there's a right to proceed, a right to life or liberty or property. What about the American Trucking Association? There was an agreement with the State. There was no preexisting right. There was an agreement with the State, and then it was alleged that the Federal Government is true to that disagreement. Kneedler So that would fit your? Absolutely. The business, the business of trucking was being engaged in. The State was regulating it through the contract, and the argument was, my business is being interfered with and Federal law outside. Kennedy Why isn't the business of providing medical services involved here? Kneedler Because the State is not regulating the business of providing medical care. The State is running a program to pay people, but it's not regulating primary conduct independent of the Federal program. Roberts Thank you, Mr. Kneedler. Mr. Piotrowski. Piotrowski Mr. Chief Justice, and may it please the Court. A question arose during my colleague's argument about couldn't we simply have filed an APA challenge to CMS's decision approving the amendment of the State's waiver. And the fact is, no, we couldn't. And that describes, that fact describes what's critical about this case. The Department of Health and Human Services, through its Center for Medicare and Medicaid Services, approved the rate-setting methodology that we asked to have implemented. We could not sue CMS for doing precisely what we would have wanted it to do, which is approve this rate-setting methodology. And so lacking any way to challenge either CMS or the State via any administrative method whatsoever, we look to equity and the longstanding cause of action that this Court has recognized, that many of the courts of appeal have recognized, to challenge unconstitutional conduct. Breyer What if you were for their approving a methodology that would end up with Dr. Smith getting $60, okay? So why do you attack it? You approved it. If you wanted it, if you liked it, you're saying they had a methodology, you approved it, you liked it. Now they apply it and he gets the $60, you think he should get $80. But I mean, how does this – now I'm confused. They didn't apply it, Your Honor. That's your whole claim, right, is that they didn't, the State didn't apply the methodology that the State developed and that CMS approved. So CMS is completely consistent with your position. The only thing that is inconsistent with your position, and the Department, for that matter, is consistent with your decision, the only thing that's inconsistent with your decision is the State's willingness to go ahead with the methodology that its own department devised and that HHS CMS approved. Breyer Why don't you just sue? See, that's why. Look, you think the doctor says, $80, I want $80. You have some statute in there that says $60. Okay. I'm suing you. There must be a whole set of rules that say when doctors get paid under this program, probably half are State, half are Federal. So he brings a suit under those rules, and when they come to the number that's there, they say, I'm so sorry, but that number has been preempted by the Federal determination under this statute. Now, why – well, I can't get away from that because I don't see why that – I don't understand what's wrong with what I'm saying. Because, Your Honor, there is no set of rules that would have allowed my clients to raise precisely that issue. There is a set of rules that allows beneficiaries to challenge their eligibility for services. There is a set of rules that allows the States to challenge the denial of a waiver amendment. There is a set of rules that allows providers to challenge only if they – only if the State deems them to have been ordered. There's no set of rules that allows the doctor to say – in other words, it's not the State that pays the doctor. Who pays the doctor? The State pays the doctor, but there is no set of rules that provides a method for a doctor to say, you paid me the – you paid me the rate that the regulations require, but that rate was too low. There is no such clause. Roberts. If there were a set of rules to that effect, would you still have an action under the Supremacy Clause or not? The equitable action we pursued here requires as an element that there be no remedy at law. Where there is an adequate remedy at law, we can't prove our case. Roberts. So what you're saying is if the – you cannot rely on the Supremacy Clause to enforce the action in that case because there are particular rules that give you an avenue of relief, right? Yes, Your Honor. Okay. How is that different than – I mean, from the private cause of action? What you're saying in that case is you're not going to – you know, you're going to follow these rules in one situation, but you're not going to follow the rules in the other situation. In this particular respect, we are similar to those private cause of action cases in that where there's a method to review, neither equity no longer applies the right of action, and it answers the question that the Chief Justice raised in Douglas, which is how can we conclude that something preempts if Congress says it doesn't? It's a good question. In that case, where – it is a good question, Your Honor, of course. And in that case, the answer is the preemption incorporates that method of review. Where no method of review is applied, where Congress has been silent on the subject, then the Court must exercise its Article III power to do equity. When Congress has been silent, what if Congress has been express? What if they say in the statute, and to be clear, there is no private right of action to enforce this provision under the statute, under the supremacy clause, under anything? In that case, we would have to evaluate that language to see what it actually accomplished in context. What it might be accomplishing is that might be Congress's way of saying this statute does not have preemptive effect, which it is, of course, free to do. It might amount to Congress making a procedural determination that injunctions won't be available for a particular type of claim, as it's done with many other types of claims. Roberts. Roberts. What if it means that Congress doesn't want there to be a private right of action? Because for the reasons that have been set forth in our implied right of action cases, there's an expert Federal agency that regulates in this context, there's other avenues of relief for people. They just say, look, we're entrusting this to HHS. It would be too difficult if every provider can bring a cause of action, if every provider under every provision of the Health Care Act can bring a private right of action. We want the agency to be the one in charge of implementing this. And, Mr. Chief Justice, Congress has done that in many circumstances where it creates an express administrative process. And where Congress has done that, we agree there no longer remains this equitable supremacy clause-based cause of action, because the power to review has been placed elsewhere. But the state that Congress cut off, that it can prevent a suit like yours, if it says that expressly, I don't know why it doesn't follow that Congress can also do that if it is clearly, if we can clearly infer from the statute that Congress didn't want that. Where do you get the – where does this express statement rule come from? Express statement may be overstating it, Your Honor, but the Court has decided in other cases that where Congress wishes to, you know, buck the existing law, so to speak, where it wishes there not to be a 1983 cause of action, for instance, you've required them to speak clearly. It could be a clear inference or implication, yet it must be clear. Here, where there is an existing right of action in equity based on the Article III power as well as on the Constitution itself, Congress should be required to speak equally clearly. How about 1983? Do you agree that there is no 1983 claim here? Yes, Your Honor. Consistent with Gonzaga v. Doe, it's difficult to see a 1983 claim under this statute. Could we get that clear? It's clear to exclude a 1983 claim, but it's not clear to exclude the claim that you're bringing. Why is that? The decision, Your Honor, in Gonzaga v. Doe would require clear rights-creating language, and the Supremacy Clause action that we're pursuing is not based on rights-creating language. Isn't there a difference in the remedies of the two actions? Absolutely there is. You know, when we're talking about a private right of action, we're talking about damages, we're talking about restitution, we're talking about all sorts of things. Here we're talking just about Younger, stopping the State from doing something that's wrong. Isn't that it? That isn't, Justice, and it's all of a part. The issue here is the violation of a constitutional provision. The remedy is the correction of that violation, and no more. Let me try once more. I did understand all these molecules, so I ought to be able to understand this. I don't know if I can. Maybe I'll put it this way. This is how it always seemed to me it should work, but apparently it can't. I'm a doctor. I want $80. Under the rules of California, I can go ask for $60. So I follow all those rules. I file my claim, and when it comes to the number, I put $80 instead of $60. All I did was change the 8 to the 6. And the defense says, hey, you shouldn't have changed the 6 to the 8. I say I did that because the 6, that number 6, is preempted by this language in section 30 of the Federal thing, and I think, though it doesn't tell you, it should be 8. Okay? Now I've got my preemption into the case. If the district judge agrees with me, he's going to make a point. He's going to say we can't have 500 different judges deciding whether it should be an 8 or a 3 or a 5 or some other thing. He says, don't worry. There's a doctrine called primary jurisdiction. Go ask the agency what to do, and the agency will either tell you, hey, there's no problem with the 8, or it will have a hearing, or it will submit a brief, it will do something, and everything will work out. Now, there's lots wrong with what I just said. Maybe you can't even know where to begin. But insofar as you can shed some light on it, I would be helped. Your Honor, I believe that you're correct, that at that point the district court could and perhaps should say, wait a minute, you're saying 80, the agency is saying 60, let's ask CMS. And at that point, the court would have to decide how exactly it goes about that. In Forma v. Walsh, in your opinion in that case, Your Honor, you said they had the power, and we certainly don't disagree. If there is, however, ongoing harm, irreparable harm, pursuant to a constitutional violation, it probably ought to at least consider, and if the requirements are met, issue an injunction. But then it could say, we're going to preliminarily enjoin, but we need CMS to come in and tell us. Breyer, you used to be a fairly well-established doctrine with the Civil Air and Nautics Board, if blessed memory. And the, the, the, the, they'd sometimes get briefs, sometimes they'd send the parties over, there were ways of doing it. Now, that doctrine, I don't think, is too live. And if, so maybe you shouldn't go on. I, just leave me to try to do my best. Sotomayor, may I go back to this, your, what you started with earlier? You're okay with the methods and procedures that have been approved for the State's setting of rates. You're saying they misapplied? What, what, what exactly are you saying? Because you keep saying, I'm entitled to more money, but what did they do wrong? The State went to the Federal Government and it said, looking forward, when we spend Federal dollars, we will do it by applying this method. Right. And CMS said, great, we like that method and it's approved. But then the Idaho legislature decided, we're not going to do that method at all. We're instead only going to let you pay the rates that fit the budget. So on the merits, this was a relatively easy case, because the State of Idaho did not say, we looked at the four Federal statutory factors and we disagreed with you. Idaho said, we looked at the Federal statutory factors, we reviewed them, we analyzed them, we came up with this rate, but we absolutely are not going to pay that rate. Instead, we're going to pay a purely budgetary rate. So that's the point. Alitoso, you're saying how far your argument goes. The Federal law still makes it a crime to sell marijuana. Some States have legalized the sale of marijuana. So let's say there is a party in one of these States who can satisfy Article III standing is injured, in fact, by the sale of marijuana, a person lives near the facility, a person says it causes crime and so forth in the area. Could that person file a lawsuit like yours based on the supremacy clause to challenge the State law legalizing marijuana? In that case, Your Honor, I think their injury is not caused by the State law. And so where it would fall down is that their injury is the result of some nuisance or trespass or something of that nature, which would provide a right of action in which the preemptive effect of the State law would not exist. Alitoso, you're saying there is a right of action to bring the preemption claim to Article III standing. My hypothesis is that the person could show injury, in fact, in the other elements of Article III standing. Assuming those elements are present, then yes, there is a right of action to bring the preemption claim. The remedy, however, is merely to prevent enforcement of the particular State law at issue. And in this case, again, assuming Article III standing assumes there's a way to remediate the problem, there's a remedy available to the district court, so I'd have to say, yes, that case could be brought. It's difficult to imagine that particular hypothetical occurring, and it would present a very narrow case, in fact, that likely would be resolved on other grounds. But what would also be subject to that? Ginsburg-Miller In this case, in this case, there's a puzzle based on the district court's determination. 38 is what you're relying on, and it requires sufficient, all that, and sufficient to enlist enough providers. According to the district court, all eligible recipients received the services that they needed. So, again, there was no waiting list. Nobody's being kept waiting. These providers, although they say they're not getting enough, are still providing the service. So where is the 30A violation? Stewart The 30A has long been understood to impose both procedural and substantive requirements. The substantive requirement is that there must be actually enough providers to allow access. There must be quality care. The procedural requirement is that the rates actually be set based on the factors that Congress considered important. And the violation of 30A here was that the State gave no consideration whatsoever to the Federal factors. They relied only on their own factors, and it is by mere accident that we ended up with a situation in which there was adequate access. It was also the case that the Federal government was not providing adequate  It was not sufficient. It was economical, quality care, and it enlisted enough providers. Stewart Your Honor, we stipulated that it enlisted enough providers, and we stipulated that the Respondents had been providing quality care. Whether we did not stipulate as to whether it was economic or efficient, and in fact we'd assert that it was not. Sotomayor But that's really irrelevant. It's not relevant to your argument. You're saying CMS approved a certain method and procedures to setting of the rate. The State didn't follow what CMS required and or what they agreed to. And as a result of that, the rate was, the rate they set had nothing to do with the method and procedures that had been set. Doesn't matter whether it's efficient. It doesn't matter what it is. The bottom line is that they were required to follow a certain method and a certain procedure. Am I correct about that? You are correct, Justice Sotomayor. And in addition, it's that problem that brought us to court rather than somewhere else. Because when the State has received approval but doesn't implement, there is no other remedy. There are dozens of different types of providers under the Act. There's home care providers, you have dentists, you have brain surgeons, orthopedic surgeons, everything. And in most instances, I don't know, maybe all, they have a similar provision. Rates have to be reasonable to ensure the availability. Now, what do you do if each of those providers bring a lawsuit similar to yours? The effect, it seems to me, will be putting the setting of budget priorities in the hands of dozens of different Federal judges. And I just don't know what the practical significance of that's going to be. The agency, in this case CMS, is always entitled to deference, and a fairly high degree of deference on issues such as this. This case presents the unusual situation in which the State simply ignored CMS's direction and approval. In the typical case, there's an approved rate-setting methodology, and that's the end of the matter. In each particular case, right? Let's just say down the street in the next courthouse or across the river in Montana or whatever, that there's a suit going on for orthopedic surgeons. Their rates are not reasonable, and they bring the same suit. It seems to me that this is a prescription for budget-busting across the board. Since at least 1969, this Court has allowed cases very similar to this, if not identical to this, but very similar to this, to be brought to the courts, and that was the date of Rosado v. Wyman. And in that 45-year period, we haven't seen a flood of litigation. Breyer, that's not the problem. The problem that's exactly that underlying this is what's bothering me, that you have a very strong case in your view, that there is a number, the number is produced by CMS methodology, they just didn't follow it, and therefore all the relief you need is tell them follow the Federal rule, which is CMS, period. But if your suit is allowed, I do not see how you distinguish. Let's say there are 5 million medical procedures, each has a cost, there are 500 judges, and 500 times 5 million is an awful lot of numbers, and they will conflict with each other, and how do we get some coherence out of this? Although you've solved the problem here, we can't close the door to everybody else if we open it to you. So how is that problem solved? That's why I was harping on primary jurisdiction, et cetera. But what I'm looking for is the solution to the problem that Chief Justice brought up. I think the problem is solved, Justice Breyer, by primary jurisdiction as one method, but also by existing notions of deference. Because the ---- Scalia, are you asking us to send this back to the agency? No, Your Honor. The agency has spoken. The agency has spoken, said this was the method to calculate these rates in the state of Idaho. But you don't want us to send it back to the Federal agency so they can tell us whether you're right or wrong about the number. The agency has spoken on this issue, Your Honor. They've approved the methodology. They approved the methodology. They didn't approve the number. That's what you're challenging here, not the methodology. You agree with the methodology. You can't at one of the ---- at the same time agree that this is a primary jurisdiction case and yet not ask to send it back to the Federal agency. The decision whether to seek the agency's input lies in the first instance with the district court. I see. It's too late for that now. I believe that if there was a need for that, the State should have asked for it. It seems to me ---- Justice, I understand your claim. It's that CMS has already spoken. All you're asking is for the State to come into compliance with what CMS said. That's it. That's correct, Your Honor. So there's nothing to send it back for. They've already spoken. You're just asking the State to come into compliance with what HHS has said. But I want to go back to the ---- HHS has not said $80. It has said the methodology. If you think $80 is not in accord with the methodology, according to Justice Breyer, you should send it back to the Federal agency under primary jurisdiction. But you didn't ask for that and you still don't ask for it. Your Honor, we didn't choose the number. The State of Idaho and its Department of Health and Welfare, Petitioner Armstrong chose the number. He ran the calculation. He prepared the methodology. He utilized the methodology. And he published a number. That's why we asked for that number. Sotomayor, I mean, but now we're getting to the merits and it's not before us. Justice Breyer was absolutely right, and this answers just the Chief Justice's point. The injunction here should have been a simple one. State, come into compliance with the methods. The ---- they may have come out to the same number if they had figured it out. Armstrong was the guy they ---- who published, but the State didn't accept that number. But they should have done the method and presented the figure to the judge. But that's not what happened here, correct? That is not what happened here. All right. So maybe there's something wrong with the injunction, but all you were seeking was compliance with Federal law. Follow the methods and procedures that CMS approved. That's correct, Your Honor. That's what we were seeking was to follow the method that CMS had approved. Well, if that's correct, it's again, as Justice Breyer pointed out, there's no way to allow you to seek that relief under an implied right of action under the supremacy clause without opening the courthouse door to everybody who says the Federal law was not followed, whether it was in going from 80 to 60 or improving the methodology or whatever. That is ---- yes, Your Honor, that's right. We opened the courthouse doors. I submit they have been opened, and we haven't seen this problem arise because of ---- Well, so it doesn't matter. The discussion we'd be having over whether it's 60 or 80, the rates, or if it's the methodology, under your theory of the case, it doesn't matter. You still get into Federal court, right? The ---- it depends on what each State does. And that's the design of Medicaid, is that it provides room, it provides flexibility for the States to act. The State of Idaho chose to develop a methodology and have that methodology approved. That was how it chose to meet the State's or Congress's command. If I understand your position, it is that the Federal Government could create a system in which it's for the Federal agency to decide whether the State has complied or not. It can do that. It just has not done so expressly here, right? Yes, and yes, Your Honor. And you say it cannot do so impliedly. The whether it could do so impliedly is truly a decision for a different case. What we have here is that Congress has not told us that it wishes to escape the 200-year history of equitable actions for constitutional violations. It hasn't told us that in any way whatsoever in the writing. I think they're asserting that under our standard, there is no private right of action unless it is created by the Congress. And we do not have implied rights of action. Now, you want to create an implied right of action here. I don't know why that isn't implicit in the scheme. Congress did not give a right to the providers. It provided a remedy through the Federal agency. The implied right of action cases address a different problem. They address the assessment of loss and risk. They address the apportionment of reward. And in that circumstance, this Court has, for a very long time now, concluded that certain particular standards must be met. The equitable cause of action to stop unlawful conduct is entirely different and predates the implied rights. Scalia. That may well be, but it seems to me it's — I am able to say that when Congress wants the scheme that you desire, it creates a private cause of action. It has not created a private cause of action here, and therefore, it impliedly does not want the scheme that you desire. That outcome, we believe, is inconsistent with the history, the history of the drafting of the Supremacy Clause. It is impractical as — or not impractical, but rather it fails to respect the expectations of Congress and the agencies that have developed over certainly the last 45 years, and arguably nearly 200. If the plaintiffs in Sandoval and Gonzaga, for example, had brought a suit like yours, would they have stated a claim? Yes, they would, Your Honor. So they just missed the boat. They didn't — all of this has been clear for 200 years, but they missed it and the Court missed it, right? And the Court spent a lot of time determining whether there's an — whether there's a claim under 1983 or whether there's an implied cause of action at all, was clear and has been for a long time under the Supremacy Clause itself. Nothing was missed at all, Your Honor. The difference between an implied right of action, a 1983 right of action, and the right of action I'm here to support is vast. I don't have an entitlement to fees. I don't have an entitlement to damages. All I can get in this case is prospective injunctive relief. In the 1983 claims, the remedies are much more wide open, and even in the implied right of action cases, we certainly have a damages remedy at the least and retrospective relief. Kagan. Kagan. Could I go back to Justice Breyer's question, and just if you would tell me if you agree with this. In the mine run of cases, CMS will have approved something. It will have approved a methodology and or a set of rates. And somebody's going to come in and challenge that, and they're going to lose, right? Because the Court is just going to say, we give deference to CMS, and CMS has approved what the State is doing, end of case, correct? Yes, Your Honor. So that leaves, I think, two kinds of cases, and it's exactly the kinds of cases that we've seen in Douglas and in this case. In Douglas, the State just flouts CMS. It says, we're going to go ahead and do what we want without seeking their permission. The States usually don't do that, but that's what they did there, and that gave rise to a claim which was not so easy to dismiss. And then in the second kind of case, the State goes to CMS, says this is what we'd like to do. CMS says, you're right, this is a great thing to do, and then the State just doesn't do it, all right? So it's these two very cabined circumstances, one where the State flouts CMS, and the other where the State asks CMS, gets his approval, and then decides we're not doing it. So those are not the mine run of cases. The mine run of cases are going to be extremely easy, I would think, under standard principles of deference, to deal with. The vast majority of these cases will founder on the shoals of preemption, because there simply won't be a preemptive effect for the conduct that is challenged. Whether it's deference or some other tool. Roberts. Are those merits determinations? They are primarily merits determinations, Your Honor. And that's why there have been so few of these cases, despite the fact that we believe they've been available, and certainly many lawyers have believed they're available. We haven't seen a lot of cases. We won't see a lot of cases. Most of them will get resolved one way or the other long before we see a genuine problem over whether it's $80 or $60. In this case, we had the unusual circumstance that the State of Idaho had directly flouted what it told the Federal agency it was going to do, and that made this case relatively easy on the merits, which ultimately brought it to this Court. The limitations that exist on these cases are serious already. Ginsburg. Do you agree that, with your brother, that CMS could have gotten this injuncted, could have gone into court and said, they told us this is their method, they didn't follow it, court enjoined them from not following the method? Yes. I believe CMS could also bring such a case. What's important is saying it's clearly right under the law, because of CMS, that we should get $80. Clearly right. Now, for a variety of reasons, we can't just go into court and say, give us the $80. But what we want to do is reverse it, ask that the Federal law preempts the State's reason for not giving us the $80, namely that statute. Is that right? That's the form of this suit? I believe so, Your Honor. Can CMS go into court? As you say, I thought what CMS can do is to simply refuse to fund the program. CMS certainly has the right to bring any right of action that my clients have the right to bring. Is that right? Do you know of any cases where that's what CMS does instead of using the coercive power it has to simply cut off the funding? I thought that was its only remedy. CMS has not done what I suggest. We would suggest, if you look at the briefing. It's had that power but never used it. That's right, Your Honor. The CMS routinely, and the Federal agencies that have this draconian power, do they in fact, are there in fact fund cutoffs? I mean, the reality is that a fund cutoff hurts everybody. The recipients don't get the benefits. The providers don't get money for the services they rendered. So it's a theoretically very powerful remedy, but practically it's never used this far as I know. It is a nuclear option, Your Honor, and one that the agency has never used so far as we know. And that's precisely the problem that this cause of action addresses. Thank you. Thank you, counsel. Mr. Rithro, you have four minutes remaining. Thank you, Mr. Chief Justice. I want to go to a couple of points. If the Court reads the district court opinion and the court of appeals opinion, nowhere in either of those opinions is there a discussion about whether the State complied with this 2009 waiver amendment methodology or whether it didn't. This case has never been about that. As pleaded, litigated, and as it comes to this Court, this case has been about whether our rates violated the Ninth Circuit's requirements that rates be based on provider costs and bear some reasonable relationship to provider costs. That's how this case was pleaded and litigated. With that out of the way, there's a couple other points I'd like to get to. The remedy of the district court opinion was that it was specifically, it wasn't sort of doing this on its own and deciding what would be efficient by its lights. What it was entirely based on was the State's own cost studies, and it was just saying that the State had already decided this, and because the State had already decided that this was necessary in order to meet the standard, that the State had to comply with its own views. We did not ever say that these rates were necessary to bring us to compliance with Section 30A. We did some studies, and the State Medicaid people decided there might be some money to raise the rates and give these providers more rates, and the ultimate decision makers, the State legislature, decided nope, not necessary. And quit. Sotomayor, are you agreeing with him that you didn't follow the procedures and methods set out in 30A, that you went about it your own way? No, I don't agree with that. We followed the methods and procedures that had been in place, and methods and procedures can be different and still produce the same rates. Rates are divorced from methods and procedures, and so we never violated any of the methods and procedures. And again, we were acting under the 2007 waiver amendment at that time. The 2009 waiver amendment wasn't even around until after this case had been filed. And so, again, the important point on this is, whether we complied with the 2009 waiver amendment, whether we did not, was never at issue in this case, ever. And so there's a couple other points that I want to get to in the limited time that I've got. Going back to Justice Breyer's example regarding why can't the doctor claim that the, that something is preempted, the doctor in that hypothetical can't claim that the rate is preempted because he does not have the right to insist to more. In other words, the statute does not give that doctor any legally cognizable interest. It would be different if the Federal statute said, Doctor, you are subject to regulations X, Y, and Z, and you are entitled to do things A, B, and C. Section 38 does not do that. Sotomayor, let me go back to, forget your position, take my hypothetical. You didn't follow the methods and procedures. Who has, do they have any right to come in on X, on an Ex parte Young theory? No. And say, moving forward, follow the procedures and set a rate consistent with the methods and procedures that you obligated yourself to do? No. They would not have a right of action. We would have the same result. And the reason for that is that Congress has set up a system where the Secretary gets to administer the statute and monitor the plan for compliance, conduct periodic audits, and then make a determination about whether we are in compliance with our methods and procedures. Our methods and procedures are broad, they are general, and then we get to work in the State to fill out the details. So they would have no right of action. I see my time is up. Thank you, counsel. The case is submitted.